STATE OF CONNECTICUT *v.* SAMUEL J. HODGE

KING, C. J., MURPHY, ALCORN, HOUSE and COTTER, Js.

Argued March 2—decided April 13, 1966

*S. William Bromson,* special public defender, with whom, on the brief, was *Philip A. Post,* for the appellant (defendant).

*George D. Stoughton,* assistant state's attorney, with whom, on the brief, was *John D. LaBelle,* state's attorney, for the appellee (state).

COTTER, J. The defendant appeals from his conviction, after a trial to the court, wherein he was found guilty as a seller of narcotics in violation of No. 485 of the 1959 Public Acts, which in relevant part is General Statutes §§ 19-246 and 19-265. He pleaded guilty under part B of the information as a second offender.[1] The evidence as to his identification as a seller consisted of the testimony of a federal narcotics agent, who claimed to have made a purchase of heroin from the defendant during an undercover investigation of narcotics activity in the city of Hartford. This appeal challenges the defendant's conviction on three distinct grounds.[2]

I

The defendant claims, in the first instance, that his arrest on November 14, 1959, for an offense that allegedly occurred October 24, 1959, was an unreasonable seizure of his person in violation of article first, § 8, of the Connecticut constitution

[1] The defendant was permitted by the court to withdraw a plea of guilty to part C of the information charging him as a third offender, and he was sentenced as a second offender only.

[2] On January 31, 1964, the Superior Court, ruling on the defendant's writ of habeas corpus, ordered that counsel be appointed to prepare and prosecute this appeal in conformity with the decision in *Douglas* v. *California,* 372 U.S. 353, 83 S. Ct. 814, 9 L. Ed. 2d 811, decided on March 18, 1963. See *Fredericks* v. *Reincke,* 152 Conn. 501, 208 A.2d 756.

(now article first, § 7, of the 1965 Connecticut constitution). It is now clear that the state and federal constitutional guarantees against unreasonable seizures pertain, inter alia, to arrests. *State* v. *Licari,* 153 Conn. 127, 132, 214 A.2d 900. The defendant's arrest was made pursuant to a warrant issued on November 13, 1959, the validity of which has not been questioned. The only claim of the defendant on this issue is that he is aggrieved because "the seizure of his person some three weeks after the alleged offense was unreasonable." He raises the question of delay in the arrest, which is one of first impression in this state. Ordinarily a delay between the time of an offense and the time of making an arrest will not affect the legality of the arrest or of the criminal proceedings subsequent thereto. *United States* v. *Holiday,* 319 F.2d 775, 776 (2d Cir.); *Carlo* v. *United States,* 286 F.2d 841, 846 (2d Cir.), cert. denied, 366 U.S. 944, 81 S. Ct. 1672, 6 L. Ed. 2d 855; *Dailey* v. *United States,* 261 F.2d 870, 872 (5th Cir.), cert. denied, 359 U.S. 969, 79 S. Ct. 881, 3 L. Ed. 2d 836. Often a lengthy delay is required because the identity of the offender is unknown to the authorities or because additional time is needed to gather sufficient evidence to justify an official charge against one who is suspected of crime. Under such circumstances, the applicable statute of limitations is the ultimate safeguard against a long-delayed arrest and prosecution.

In some recent cases arising in the federal courts, however, it has been recognized that where the delay in arresting a defendant (or in otherwise apprising him of the charges against him) continues long after all the evidence has been assembled, and becomes a product of mere convenience to the state, a question of an unreasonable seizure or lack of

a fair trial may arise. *Ross* v. *United States,* 349 F.2d 210, 213 (D.C. Cir.); *Cannady* v. *United States,* 351 F.2d 817, 818 (D.C. Cir.). The cited cases are concerned with delays due to undercover investigations of narcotics traffic, as in the present case, and we may assume that their basic reasoning is applicable to a claim of an unreasonable seizure brought under our state constitution. The defendant's rights under this claim must necessarily depend on all the circumstances, including the length of the delay, the reason for the delay, prejudice to the defendant, and a timely presentation of the claim to the trial court. Some prejudice to the defendant's case must be shown. *Jackson* v. *United States,* 351 F.2d 821, 822 (D.C. Cir.). Such prejudice might consist of the unavailability of alibi witnesses or the impaired memory of the defendant and others who vouch for his innocence.[3] *Cannady* v. *United States,* supra.

In the present case, there was an interval of three weeks between the sale of narcotics to the undercover agent and the arrest of the defendant. This can hardly be considered an unreasonable delay. See *Jackson* v. *United States,* supra (five months' delay); *Mackey* v. *United States,* 351 F.2d 794, 795 (D.C. Cir.) (two months' delay); *Bey* v. *United States,* 350 F.2d 467 (D.C. Cir.) (three and one-half months' delay); *Hardy* v. *United States,* 343 F.2d 233, 234 (D.C. Cir.) (eight months' delay). In addition, the purpose of the delay was to protect

---

[3] The importance of these considerations becomes clear when measured against the state's ability to collect and document evidence as it carries out its criminal investigation, thereby preserving its probative firepower until the time of eventual arrest. The accused, on the other hand, may find it difficult to match the state's careful documentation, particularly if he had no reason to anticipate being charged with a crime.

the identity of an undercover agent who had been active in Hartford for about seven months and whose investigation resulted in twenty-one arrests of narcotic offenders which were made on November 13 and 14, 1959, and thereafter. A reasonable delay of this nature may be a proper adjunct to responsible police investigation and should not undermine the legality of subsequent arrests and convictions except under unusual and clearly prejudicial circumstances. *Ross* v. *United States,* 349 F.2d 210, 212 (D.C. Cir.). It has been recognized that holding up the arrest and indictment for eleven months to complete undercover work is reasonable and that a mere delay in arrest does not of itself violate any of the accused's rights. *United States* v. *Simmons,* 338 F.2d 804, 806 (2d Cir.); see to the same effect *United States* v. *Dickerson,* 347 F.2d 783, 784 (2d Cir.) (seventeen months' delay). Finally, no prejudice to this defendant appears. His alibi witnesses displayed particularly acute memories in recreating the events of the evening in question. We conclude, therefore, that the length of the delay prior to the defendant's arrest was not unreasonable and did not deprive him of a fair trial under the circumstances of this case.

## II

The second claim of the defendant is that, once arrested, he was denied his right to a speedy trial, in violation of article first, § 9, of the Connecticut constitution (now article first, § 8, of the 1965 Connecticut constitution).

"Whether an accused has been denied his constitutional right to a speedy trial depends upon the facts in a particular case. The right may be waived when a defendant consents to delay or both

prosecution and defense agree upon or stipulate for postponement. Waiver may be implied where the defendant, in court, interposes no objections to a continuance." *State* v. *Holloway,* 147 Conn. 22, 25, 156 A.2d 466, cert. denied, 362 U.S. 955, 80 S. Ct. 869, 4 L. Ed. 2d 872. Delays occasioned by the defendant in attempting to retain private counsel are for his own advantage and cannot be used in advancing the claim that the defendant was denied his constitutional right to a speedy trial. See *State* v. *Doucette,* 147 Conn. 95, 107, 157 A.2d 487; 21 Am. Jur. 2d 289, Criminal Law, § 252. Delays which are necessary in accordance with the settled course of judicial proceedings in the administration of the criminal law do not violate such a constitutional right to a speedy trial. *Wojculewicz* v. *Cummings,* 145 Conn. 11, 19, 138 A.2d 512, cert. denied, 356 U.S. 969, 78 S. Ct. 1010, 2 L. Ed. 2d 1075.

No general principle can be stated in an effort to prescribe an exact period of time to satisfy the constitutional right to a speedy trial. Under the facts of this case, for instance, there were delays occasioned by the defendant and his counsel throughout the proceedings before the trial took place. The constitutional provision does not rule out accidental, necessary or reasonable delays but only those which are vexatious, capricious, arbitrary or oppressive. *Pollard* v. *United States,* 352 U.S. 354, 361, 77 S. Ct. 481, 1 L. Ed. 2d 393.

After his arrest, the defendant was presented in the municipal court in Hartford on December 8, 1959, a hearing on probable cause was held, and he was then bound over to the Superior Court for trial. At this time and prior thereto he was represented by private counsel. No claim was made at that time of the delay in the arrest or of a failure

to grant a speedy trial. He was presented in the Superior Court on February 3, 1960. His counsel was not present in court, and the case was passed. When his private counsel did not appear in the Superior Court in his behalf, the defendant informed the presiding judge of the name of his attorney. His attorney was contacted, entered his appearance for the defendant, and the case was continued. Subsequently, in April, that attorney was permitted to withdraw as counsel without objection on the part of the defendant, who was present in court at that time. Thereafter the public defender for Hartford County was appointed to represent the defendant. On May 10, 1960, at the commencement of the trial, the public defender filed a motion to dismiss the information on the grounds that the seizure of the person was unreasonable and that the state failed to give the defendant a speedy public trial.

"Three reasons have been suggested for according an accused a speedy trial: (1) to protect the accused from prolonged preliminary imprisonment; (2) to relieve him of anxiety and public suspicion attendant upon an untried accusation; and (3) to insure that means of proving his innocence will be within his reach by minimizing the possibility of witnesses becoming unavailable and their memories dulled." *Commonwealth* v. *Hanley,* 337 Mass. 384, 387, 149 N.E.2d 608, cert. denied, 358 U.S. 850, 79 S. Ct. 79, 3 L. Ed. 2d 85; *People* v. *Prosser,* 309 N.Y. 353, 356, 130 N.E.2d 891. None of these reasons can be said to apply in this case so as to affect the trial to the disadvantage of the defendant. Under all the circumstances, we conclude that there was no denial of the defendant's right to a speedy trial.

## III

The final claim of the defendant is that upon all the evidence his guilt was not proved beyond a reasonable doubt. This claim can only be tested by reviewing the evidence printed in the appendices to the briefs, together with such exhibits, if any, as are made a part of the record on appeal. *State* v. *Davis,* 153 Conn. 228, 229, 215 A.2d 414. The incriminating evidence offered by the state in this case consisted of testimony by a federal undercover agent that the federal bureau of narcotics directed an undercover investigation of illicit traffic in narcotic drugs in the city of Hartford beginning some time in April, 1959. The federal agent came to Hartford at that time to carry out these secret investigations and worked in conjunction with another federal agent and two Hartford detectives. He met the defendant on October 24, 1959, and the defendant told him that he had heroin for sale. After some discussion the defendant left, returned in about five minutes and sold the agent a packet of heroin for $5. The purchase was made on a fair night in an area well lit by street lights, entrance lights, a neon sign and car lights. Prior to this occasion the federal agent was aware that the defendant associated with known drug pedlars and addicts. After the purchase, the agent field tested the contents of the packet and determined that the substance contained an opium derivative. Later chemical analysis showed it to be heroin. The defendant's witnesses testified that he was at a party during the time of the alleged sale. The issue therefore resolved itself into one of credibility to be determined by the trier of fact. *Ramadei* v. *Saccavino,* 150 Conn. 700, 190 A.2d 489. The trial court's dis-

crediting of the alibi testimony was within its province of assessing the reliability and credibility of witnesses. See *State* v. *Bill,* 146 Conn. 693, 695, 696, 155 A.2d 752; *State* v. *LaFountain,* 140 Conn. 613, 616, 103 A.2d 138. This rule has specifically been applied in a situation where the testimony of a single undercover agent was contradicted by the testimony of alibi witnesses. *Morgan* v. *United States,* 319 F.2d 711 (D.C. Cir.), cert. denied, 375 U.S. 884, 84 S. Ct. 158, 11 L. Ed. 2d 114; see *United States* v. *Dickerson,* 347 F.2d 783, 784 (2d Cir.).

It is not uncommon for an accused to be found guilty upon identification by only the complaining witness, and "it is not the law that corroboration is essential to the proof of guilt." *State* v. *Chuchelow,* 131 Conn. 82, 83, 37 A.2d 689. The issue is not to be determined "solely by counting the witnesses on one side or the other." *Sullivan* v. *Nesbit,* 97 Conn. 474, 477, 117 A. 502; *Weiler* v. *United States,* 323 U.S. 606, 608, 65 S. Ct. 548, 89 L. Ed. 495; 32A C.J.S. 658, Evidence, § 1022 (c); 20 Am. Jur. 1044, Evidence, § 1190. Numerical superiority is not the criterion or key to such a determination. *State* v. *Coburn,* 122 Vt. 102, 108, 165 A.2d 349; *People* v. *Renallo,* 410 Ill. 372, 377, 102 N.E.2d 116; *People* v. *Placido,* 310 Mich. 404, 408, 17 N.W.2d 230; *State* v. *Haines,* 18 N.J. 550, 565, 115 A.2d 24. There was sufficient evidence presented by the state to find the defendant guilty beyond a reasonable doubt and his conviction cannot be upset on this ground. See *Jackson* v. *United States,* 351 F.2d 821, 822 (D.C. Cir.); *Wilson* v. *United States,* 335 F.2d 982, 983 (D.C. Cir.).

There is no error.

In this opinion the other judges concurred.