After a trial without a jury the defendant was found guilty of the illegal use of a siren in violation of General Statutes 14-80 (d).[1] *Page 552 
The defendant claims error in the denial of his motion to suppress certain evidence, in the denial of his request for a continuance because of the absence of a witness and in the conclusion of guilt reached by the trial court on the facts found.
The finding states that on February 10, 1975, at about 3 p.m., Rocco Lagonegro and his wife were proceeding in an automobile on an entrance ramp to the Connecticut turnpike in Stamford when a wrecker driven by the defendant cut them off. Lagonegro caught up with the wrecker on the turnpike after about one mile. As he pulled alongside, a siren was heard and he and his wife concluded that it must have come from the wrecker. Lagonegro then pulled off the highway and reported the incident to the police, giving the registration number of the wrecker. The number was traced to Chris Automotive Service in Fairfield. When the police officer to whom the incident had been reported went to that location he saw the wrecker pulling out as he arrived and he stopped it about two blocks away. The wrecker was being operated by an employee who opened the door of the vehicle and unlatched the hood as requested by the officer in order to enable him to make an inspection. The officer found an electric police siren attached to the engine frame and wired into a solenoid and also into the battery. *Page 553 
Under the dashboard in the cab of the truck was a toggle switch. While the truck was parked with the engine running, the officer found that when the toggle switch was moved and when the horn on the steering wheel was depressed the siren would sound.
The defendant, who came to the scene soon after the truck was stopped, admitted that he had been operating the truck at the time of the incident involving Lagonegro. The defendant told the officer that the siren was part of a burglar alarm system which was being installed in the truck but which had not been completed. In the opinion of the officer the siren was hooked up in the same way as a siren in a police car.
The defendant claims that the search conducted by the officer after the vehicle was stopped as it was being driven by the employee of the defendant was illegal. He concedes that the officer had probable cause to make the search but claims there were no exigent circumstances to justify the failure to obtain a search warrant beforehand. The state claims that there was consent to the search on the part of the defendant's employee who had the vehicle in his custody. It is unnecessary to consider that claim because the trial court made no finding of such voluntary consent but relied wholly upon the so-called automobile exception to the search warrant requirement.
Ever since Carroll v. United States, 267 U.S. 132, it has been clear that a police officer may, without a warrant, stop and search on a highway a vehicle which he reasonably believes to contain any object which offends against the law. The mobility of a vehicle as compared to a house has been deemed to render it impracticable to obtain a warrant before conducting the search. Id., 153. *Page 554 
The rule has been extended beyond this original rationale to justify a warrantless search of a vehicle used in the commission of a crime after it has been immobilized and a warrant could readily be obtained. Chambers v. Maroney, 399 U.S. 42. The right to seize carries with it the right to search the vehicle. "For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant." Id., 52.
Since it is not disputed that the officer had probable cause to believe that the defendant's wrecker was unlawfully equipped with a siren, he had a right to stop and to seize it when he observed the vehicle being operated on a public highway. General Statutes 14-103 (c) expressly gives to state and local police officers the right to stop any motor vehicle ". . . whenever they see a motor vehicle being operated in apparent violation of any statute relative to the equipment of a motor vehicle . . . ." According to the information received by the officer, the defendant's vehicle was being operated in apparent violation of 14-80 (d) which prohibits a vehicle from being equipped with a siren. Even if he may previously have had an opportunity to obtain a search warrant, he was not bound to tolerate a continued violation of the law. His right to seize the vehicle is clear under the circumstances, and his right to make a limited search for the offending object without obtaining a warrant is equally plain. Chambers v. Maroney, supra, 52.
The defendant also claims error in the refusal of the court, after the state had rested, to continue the case for a couple of days to allow him to bring from New York an expert witness to testify about the siren in the vehicle. A continuance of two days had *Page 555 
been allowed during the trial, at the request of the state, so that a policeman would be available to testify. It does not appear from the record that the defendant had previously engaged the expert for whom a continuance was requested. There was no indication that the defendant had attempted to have his expert in court on any day of the trial. The trial judge denied the request, remarking that he was leaving the geographical area where the trial was held that day and did not expect to be back. After that ruling the state stipulated with the defendant that a letter containing an opinion of a service manager for an automobile dealer who had serviced the wrecker and examined the siren installation might be introduced as embodying the testimony of that witness.
We have recently discussed the obligation of the parties to provide for the attendance of witnesses upon the trial dates as assigned. State v. Michaels, 34 Conn. Sup. 514. In the present case the only excuse suggested by the defendant for his failure to arrange to have his expert present was the fact that at the start of the trial two days earlier a substituted information was filed charging a violation of 14-80 (d) instead of14-283 (h) which the officer had originally cited. No request for a postponement was made by the defendant at that time. It is evident from the content of the letter, which he had obtained from an automobile service manager, that the defendant was fully aware of the nature of any issue upon which expert testimony might prove useful. We can find no abuse of discretion in the denial of this request for a continuance. The defendant was not prejudiced in any event, in view of the stipulation that the substance of the expert's testimony was contained in the letter presented to the court as an exhibit. Rusch v. Cox, 130 Conn. 26, 32. *Page 556 
The defendant's claim that the evidence is insufficient to warrant a finding of guilty seems to be based on the assumption that the court was bound to accept portions of the testimony of the defendant as well as the opinion of the expert contained in the letter submitted as an exhibit unless the state offered evidence in direct contradiction. We are not aware of any such principle of law. It is commonplace to observe that the credibility of witnesses and the weight to be accorded their testimony is wholly within the province of the trier to decide. State v. Farrah, 161 Conn. 43, 49. There was ample testimony to support the conclusion of guilt reached by the trial court in this case.
 There is no error.
In this opinion PARSKEY and SPONZO, Js., concurred.