STATE OF CONNECTICUT *v.* RICHARD D. COLLINS

APPELLATE SESSION OF THE SUPERIOR COURT

FILE No. 1294

Argued February 16—decided May 27, 1983

*Stanley Herman,* assistant public defender, for the appellant (defendant).

*Robert A. D'Andrea,* deputy assistant state's attorney, for the appellee (state).

BIELUCH, J. The defendant was tried by a jury and found guilty of larceny in the fourth degree by false pretenses in violation of General Statutes § 53a-125.[1]

The facts are as follows: On October 3, 1981, trooper Bernard DePrimo of the state police along with another trooper attended the Harwinton state fair. Their purpose in attending the fair was to investigate possible fraudulent carnival games. At the time, DePrimo was assigned to the criminal intelligence division and was an expert in the field of deception and fraud in the operation of carnivals.

Upon arriving at the fair, DePrimo walked along the midway and observed persons playing the various games. After seeing others play a game at a booth operated by the defendant, DePrimo decided to investigate the game more closely. Several factors suggested to DePrimo that the defendant's game might be fraudulent. First, it was a "hoopla" game which required the player to toss a ring around a wooden block in order to win a prize. He observed that the blocks were large in relation to the size of the rings. Second, he noticed that there were no signs on the booth describing the terms and conditions of the game. Third, there were very few prizes on the shelves and of those that were there, some had dust on them. DePrimo decided that he would try the game. The defendant informed him that he would get six chances for one dollar, that total

---

[1]"[General Statutes (Rev. to 1981)] Sec. 53a-125. LARCENY IN THE FOURTH DEGREE. CLASS C MISDEMEANOR. (a) A person is guilty of larceny in the fourth degree when the value of the property or services is fifty dollars or less."

"[General Statutes] Sec. 53a-119. LARCENY DEFINED. A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to . . . (2) Obtaining property by false pretenses. A person obtains property by false pretenses when, by any false token, pretense or device, he obtains from another any property, with intent to defraud him or any other person."

encirclement of the block entitled him to a large prize (a stuffed white buffalo) and that a "hanger", or partial encirclement, would entitle him to a smaller prize (a painted feather).

The trooper observed that the blocks around which the ring had to be tossed were on a shelf which was approximately chest high. The blocks were pieces of wood two and one-quarter inches by three inches standing on end with the upper end cut at an angle to create a slanted surface. The slanted surface faced the patron. The wooden rings were lightweight and were four inches in diameter, but too small to encircle the slanted surface. The only manner in which the hoop could encircle the block would be to drop the ring vertically from above onto the block, an impossibility because the rings had to be tossed from in front of the stand. It would be almost impossible, likewise, to score a "hanger".

DePrimo paid the defendant the charge of one dollar and missed on all six tries. Shortly thereafter, he inspected the blocks and found that although the rings fit vertically around the blocks, they could not encircle the slanted surface facing the customer. The defendant was then arrested and the evidence seized. At trial, DePrimo was the only witness for the prosecution and, on the basis of his testimony describing the game and its operation, the defendant was convicted.

The defendant first assigns error in the denial of his motion for judgment of acquittal. The basis of that motion was the prosecution's failure to prove an essential element of the crime of larceny by false pretenses, to wit, reliance by the victim on a false game to his loss. This claim presents the unusual defense that DePrimo was not an innocent victim induced to his loss and damage by the fraudulent scheme because his prior suspicion contradicted his inducement or reliance. The

defendant contends, therefore, that since DePrimo was the only witness presented at trail, the necessary element of reliance or inducement was lacking and the court should have granted his motion. We reject this argument.

It is true that reliance upon the false token, pretense or device is part of the corpus delicti of larceny by false pretenses. *State* v. *Farrah,* 161 Conn. 43, 47, 282 A.2d 879 (1971). The mere fact that one suspects the device to be fraudulent, however, does not preclude his reliance upon it to his detriment. In addition, DePrimo testified that he observed others play the defendant's game, that he thought the game was rigged and that he did not inspect the blocks until after he had paid the defendant's charge and had tried his luck at the game. Moreover, the defendant, by conducting a carnival game of chance which was open to the general public, held himself out to be doing so in a legal and proper manner. Thus, any patron, suspicious or otherwise, had the right to rely on this presumption of legality. From this, we conclude that the DePrimo could substantially rely upon the implied representation by the defendant that the game was not fraudulent despite his suspicions. The jury returned a verdict of guilty, and we must presume that it found that the trooper was induced to play the game like other customers, relying upon its appearance as a legal game of chance. The evidence amply supports this finding.

The defendant also assigns error in the court's instructions with regard to intent. The judge instructed the jury that "you can go to Mr. Collins' acts and indicate whether he intended to defraud officer DePrimo or any other person. If you find, or if you feel that, you can infer from the fact that he set up the booth that he anticipated being there all day long, and that he was going to sell these rings to other people. And if you find that he had the intent to defraud, then the ques-

tion is whether or not you can infer that he had the intent to defraud not only officer DePrimo but any other person. Because that's what the statute says." The defendant contends that since DePrimo was the only witness produced at trial, there was no evidence that the defendant intended to defraud any other person. He claims, therefore, that the instructions were confusing. We disagree.

"To provide adequate instructions to the jury on an element of an offense, the trial court must explain what the element means and, in the appropriate context, provide the jury with guidelines for determining whether the element has been proved beyond a reasonable doubt." *State* v. *Mason,* 186 Conn. 574, 586, 442 A.2d 1335 (1982). We believe that the court's instructions set forth the requirements of the crime charged and adequately defined the requirement of intent necessary for a conviction of larceny by false pretenses.

There is no error.

In this opinion DALY and COVELLO, Js., concurred.