STATE OF CONNECTICUT v. GENE C.*
(AC 33111)

Gruendel, Beach and Espinosa, Js.

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom their identities may be ascertained. See General Statutes § 54-86e.

Argued October 17, 2012—officially released January 15, 2013

*Christopher Y. Duby*, appointed counsel, for the appellant (defendant).

*Amanda Shaffer*, certified legal intern, with whom were *Harry Weller*, senior assistant state's attorney, and, on the brief, *Maureen Platt*, state's attorney, and *Catherine Brannelly Austin*, senior assistant state's attorney, for the appellee (state).

*Opinion*

GRUENDEL, J. The defendant, Gene C., appeals from the judgments of conviction, rendered after a jury trial, of three counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), three counts of sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1), two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1), and seven counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2).[1] On appeal, the defendant claims that the court improperly (1) denied his posttrial motion for a judgment of acquittal and (2) admitted constancy of accusation testimony. We affirm the judgments of the trial court.

The jury reasonably could have found that, beginning at the ages of six and seven, respectively, the defendant sexually assaulted his two daughters, L and M, over the course of several years. More specifically, the defendant forced them to engage in oral and vaginal intercourse with him on numerous occasions.

[1] This case involves the sexual assault of two children. Although the state originally charged the defendant in separate informations, the court consolidated the cases prior to trial.

On February 13, 2009, M informed an English teacher and a guidance counselor at her school that the defendant had touched her.[2] That night, M confided to her maternal aunt (aunt) that the defendant had raped her "once a week for like five years." The aunt shared this information with M's mother, who later contacted the police. On February 17, 2009, L and M provided a written statement to the police.

The defendant thereafter was arrested and charged with the aforementioned offenses. Prior to trial, the defendant filed a motion in limine to preclude "postcharge constancy testimony" pursuant to § 6-11 (c) of the Connecticut Code of Evidence.[3] In that motion, the defendant sought preclusion of "any testimony regarding complaints made after an official complaint was made to the police." During a pretrial proceeding, the court granted that motion as follows: "The next motion I have is the motion to preclude postcharge constancy testimony. I understand that the state agrees in principle that the constancy of accusation evidence should not include anything after the charge and that, in any event, it does not have any such evidence, so . . . I believe the motion should be granted."

At trial, both L and M provided detailed testimony regarding the sexual assaults. In addition, the aunt testified at trial that M informed her on the evening of

[2] Consistent with the mandate of General Statutes § 17a-101, school officials immediately reported that allegation to the department of children and families.

[3] Section 6-11 (c) of the Connecticut Code of Evidence provides: "A person to whom a sexual assault victim has reported the alleged assault may testify that the allegation was made and when it was made, provided the victim has testified to the facts of the alleged assault and to the identity of the person or persons to whom the assault was reported. Any testimony by the witness about details of the assault shall be limited to those details necessary to associate the victim's allegations with the pending charge. The testimony of the witness is admissible only to corroborate the victim's testimony and not for substantive purposes."

February 13, 2009, that the defendant had sexually assaulted her on several occasions. The defendant testified in his own defense, categorically denying the accusations against him.[4] At the conclusion of trial, the jury found the defendant guilty on all counts. The court rendered judgment accordingly and thereafter sentenced him to a total effective term of thirty-six years incarceration, execution suspended after twenty-four years, and twenty-five years of probation with special conditions that included lifetime registration as a sex offender. This appeal followed.

I

The defendant first claims that the court improperly denied his posttrial motion for a judgment of acquittal because there was insufficient evidence to support his conviction. He is mistaken.

"The standard of review employed in a sufficiency of the evidence claim is well settled. [W]e apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the [jury] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . . [A reviewing court] cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict. . . . [P]roof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support

---

[4] Both the state and the defendant presented the testimony of other witnesses that is not relevant to this appeal.

a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *St. Cyr*, 100 Conn. App. 189, 194–95, 917 A.2d 578, cert. denied, 282 Conn. 915, 924 A.2d 140 (2007).

A reasonable view of the evidence plainly exists that supports the jury's guilty verdict. L and M provided graphic testimony detailing the sexual assaults. It would serve no useful purpose to recite the specifics of that testimony. Suffice it to say that both L and M testified that, from the time they were six or seven years old, the defendant forced them to engage in oral and vaginal intercourse with him over a period of several years.[5] The jury, as sole arbiter of credibility, was free to believe that testimony. See *State* v. *Russell*, 101 Conn. App. 298, 316, 922 A.2d 191, cert. denied, 284 Conn. 910, 931 A.2d 934 (2007).

On appeal, the defendant argues that "there is no evidence that the defendant committed any criminal act once [L and M's] testimony is removed from the analysis," emphasizing that "[t]he state presented no physical evidence and no evidence from anyone about the assaults other than those complaining of them." In so doing, the defendant misconstrues the applicable legal standard.

It is well established that "[i]t is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses. . . . The [fact finder] can . . . decide what—all, none, or some—of a witness' testimony to accept or reject. . . . As a corollary, [q]uestions of whether to believe or to disbelieve a competent witness are beyond our review. As a reviewing court, we may not retry the case or pass

---

[5] L testified at trial that the defendant repeatedly threatened to "kill" her mother if she ever informed her of the sexual assaults.

on the credibility of witnesses. . . . [W]e must defer to the [finder] of fact's assessment of the credibility of the witnesses that is made on the basis of its firsthand observation of their conduct, demeanor and attitude." (Citation omitted; internal quotation marks omitted.) *State* v. *Altayeb*, 126 Conn. App. 383, 387–88, 11 A.3d 1122, cert. denied, 300 Conn. 927, 15 A.3d 628 (2011). Credibility determinations are the exclusive province of the jury as fact finder, which we refuse to disturb.

In addition, this appellate tribunal cannot discard the testimony offered by the complainants in the present case, particularly when that testimony corroborates, in convincing fashion, the verdict returned by the jury. It matters little that the state's case consisted primarily of that testimony or that it lacked physical evidence. Our Supreme Court has recognized that a jury reasonably can find a defendant guilty of sexual assault on the basis of the victim's testimony alone. *State* v. *Monk*, 198 Conn. 430, 433, 503 A.2d 591 (1986); *State* v. *Brice*, 186 Conn. 449, 458 n.10, 442 A.2d 906 (1982). Because the testimony of L and M provides an ample basis for the jury to find the defendant guilty of the charged offenses, the defendant's claim fails.

II

The defendant also contends that the court improperly admitted the constancy of accusation testimony offered by M's aunt. The basis of his claim is twofold. First, he argues that M reported the sexual assaults to her aunt after filing a complaint with the police. Second, he insists that M reported the sexual assaults to her aunt after making a report to school officials. Both claims are unavailing.

"[W]hether evidence is admissible under the constancy of accusation doctrine is an evidentiary question that will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant

of substantial prejudice or injustice. . . . An appellate court will make every reasonable presumption in favor of upholding the trial court's evidentiary rulings." (Internal quotation marks omitted.) *State* v. *Francis D.*, 75 Conn. App. 1, 5, 815 A.2d 191, cert. denied, 263 Conn. 909, 819 A.2d 842 (2003). To the extent that the evidentiary ruling in question is challenged as an improper interpretation of a rule of evidence, our review is plenary. *State* v. *Saucier*, 283 Conn. 207, 218, 926 A.2d 633 (2007).

As this court observed in *State* v. *Antwon W.*, 118 Conn. App. 180, 982 A.2d 1112 (2009), cert. denied, 295 Conn. 922, 991 A.2d 568 (2010), "[t]he constancy of accusation doctrine traces its roots to the common-law concept of hue and cry whereby victims of violent crime were expected to cry out immediately and alert their neighbors that they had been violently assaulted. . . . In the context of sexual assault, evidence of a victim's hue and cry was a necessary prerequisite for a court to hear a rape case such that a woman who had not so complained could not have her case prosecuted. . . . Until 1974 in Connecticut, the state was required to offer evidence corroborating a victim's claims to obtain a conviction for sexual assault. . . . The General Assembly repealed this requirement of corroboration in Public Acts 1974, No. 74-131. Despite the repeal of the corroboration requirement, in cases such as the present one, the state often seeks to offer evidence corroborating the victim's complaint of sexual abuse." (Citations omitted; internal quotation marks omitted.) Id., 195.

In *State* v. *Troupe*, 237 Conn. 284, 677 A.2d 917 (1996), our Supreme Court "determined that the constancy of accusation doctrine should be modified to better accommodate the interest of the victim in being protected against the unwarranted, but nonetheless persistent, view that a sexual assault victim who does not

report the crime cannot be trusted to testify truthfully about the incident . . . and the interest of the accused in being protected against an enhanced risk that the jury may be unduly swayed by the repeated iteration of the constancy of accusation testimony. . . . [The court] thus decided in *Troupe* to reject the then existing rule that a person to whom a sexual assault victim has complained may provide substantive testimony regarding the incident. . . . [It] concluded [that a] person to whom a sexual assault victim has reported the assault may testify only with respect to the fact and timing of the victim's complaint; any testimony by the witness regarding the details surrounding the assault must be strictly limited to those necessary to associate the victim's complaint with the pending charge, including, for example, the time and place of the attack or the identity of the alleged perpetrator. . . . Thus, such evidence is admissible only to corroborate the victim's testimony and not for substantive purposes. Before the evidence may be admitted, therefore, the victim must first have testified concerning the facts of the sexual assault and the identity of the person or persons to whom the incident was reported. In determining whether to permit such testimony, the trial court must balance the probative value of the evidence against any prejudice to the defendant." (Citations omitted; internal quotation marks omitted.) *State* v. *Samuels*, 273 Conn. 541, 547–48, 871 A.2d 1005 (2005).

The court further clarified that admission of constancy of accusation testimony is limited to reports made by the victim to constancy witnesses prior to the victim's filing of an official complaint with the police. Id., 551–52 ("[o]nce a sexual assault victim has reported the crime to the police . . . corroborative testimony by constancy witnesses that is based on postcomplaint conversations with the victim, even if relevant, no

longer serves the purpose of countering a negative inference as to the victim's credibility because it is the inconsistency between the victim's silence following the assault and her subsequent complaint to the police that gives rise to such an inference"); accord *State* v. *Arroyo*, 284 Conn. 597, 639–40, 935 A.2d 975 (2007) (limitation on constancy of accusation doctrine set forth in *Samuels* triggered "once a victim has herself reported the crime to the police"); *State* v. *McKenzie-Adams*, 281 Conn. 486, 541, 915 A.2d 822 ("statements made by a victim after he or she had filed an official complaint with the police [are] inadmissible as constancy of accusation evidence"), cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007). With that context in mind, we turn to the specific claims raised by the defendant.

A

The defendant first argues that the court abused its discretion in admitting the constancy of accusation testimony of the aunt because M reported the sexual assaults to her subsequent to filing a complaint with the police. That claim fails because it is factually incorrect. The evidence at trial established that M reported the sexual assaults to the aunt on the evening of February 13, 2009, and that she thereafter spoke with the police on February 17, 2009. The defendant has not identified any evidence indicating otherwise. Because the undisputed evidence in the record before us demonstrates that M reported the sexual assaults to the aunt prior to filing a complaint or speaking with the police, his claim is without merit.

B

The defendant also claims that court abused its discretion in admitting the constancy of accusation testimony of the aunt because M reported the sexual assaults to school officials prior to reporting them to the aunt. He maintains that because school officials are

mandated reporters pursuant to General Statutes § 17a-101,[6] M's complaint to them on the afternoon of February 13, 2009, triggered the limitation on constancy of accusation testimony, thereby barring the aunt's testimony. We disagree.

Contrary to the defendant's contention, under Connecticut law, the limitation on constancy of accusation testimony is triggered "once a victim has herself reported the crime to the police . . . ." *State* v. *Arroyo*, supra, 284 Conn. 639–40. In *Arroyo*, our Supreme Court rejected the claim that the limitation on constancy of accusation testimony is triggered when a mandated reporter files an official complaint on behalf of a victim. Id., 640. As the court explained, "a state agency cannot be considered as an agent or a surrogate for the child in making such a complaint but, rather, must be viewed as acting in fulfilling its own institutional and statutory obligations [as a mandated reporter pursuant to] § 17a-101 (b) . . . ." Id., 639. The defendant has neither acknowledged nor attempted to distinguish *Arroyo* in his principal and reply briefs. Bound by that precedent, we thus view the act of the school officials in reporting M's allegations to the department of children and families as fulfillment of their own institutional and statutory obligations, rather than as surrogacy for M.

---

[6] General Statutes § 17a-101 (b) provides in relevant part that "a school employee, as defined in section 53a-65" shall be a mandated reporter. General Statutes § 53a-65 (13) defines "school employee" as "(A) A teacher, substitute teacher, school administrator, school superintendent, guidance counselor, psychologist, social worker, nurse, physician, school paraprofessional or coach employed by a local or regional board of education or a private elementary, middle or high school or working in a public or private elementary, middle or high school; or (B) any other person who, in the performance of his or her duties, has regular contact with students and who provides services to or on behalf of students enrolled in (i) a public elementary, middle or high school, pursuant to a contract with the local or regional board of education, or (ii) a private elementary, middle or high school, pursuant to a contract with the supervisory agent of such private school."

The mandated reporter statute "is intended to facilitate the protection of children and their removal from abusive situations. It is not a statute designed to preserve or protect evidence pertaining to such abuse." *In re Robert K.*, 12 Conn. App. 585, 591, 532 A.2d 1319 (1987). That purpose is embodied in § 17a-101 (a), which provides: "The public policy of this state is: To protect children whose health and welfare may be adversely affected through injury and neglect; to strengthen the family and to make the home safe for children by enhancing the parental capacity for good child care; to provide a temporary or permanent nurturing and safe environment for children when necessary; and for these purposes to require the reporting of suspected child abuse or neglect, investigation of such reports by a social agency, and provision of services, where needed, to such child and family." That statute requires mandatory reporting of "child abuse and neglect" to the department of children and families, an administrative agency whose core function is protection, not prosecution. See General Statutes § 17a-3.

Although the department is required to notify law enforcement in certain circumstances; see General Statutes § 17a-101b; that imperative does not transform the department into an arm of law enforcement. Our Supreme Court has held that the act of a department agent filing a report with the police does not trigger the limitation on constancy of accusation testimony. *State* v. *Arroyo*, supra, 284 Conn. 639–40. If the filing of a report with police by department personnel does not constitute an official complaint to the police for purposes of constancy of accusation analysis, we cannot fathom how the filing of a report with the department by a mandated reporter constitutes such an official complaint.

The precedent of this state's highest court instructs that the act triggering the limitation on constancy of

accusation testimony is the filing of a complaint by the victim herself with the police.[7] Id.; *State* v. *McKenzie-Adams*, supra, 281 Conn. 541; *State* v. *Samuels*, supra, 273 Conn. 551–52. The defendant has presented no cogent rationale for a departure from that precedent in the present case. Because M reported the sexual assaults to the aunt prior to filing her complaint with the police, the court did not abuse its discretion in admitting that constancy of accusation testimony.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[7] Our Supreme Court described the rule that the limitation on constancy of accusation testimony is triggered when the victim herself files a complaint to the police as a "bright line rule." *State* v. *Arroyo*, supra, 284 Conn. 639. The court also rejected the claim that this bright line rule would be "rigid and unworkable," stating that "[w]e do not agree that it is difficult to determine when a complaint has been made to the police." *State* v. *Samuels*, supra, 273 Conn. 554.

